**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOSE A. MARBAN, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:12-CV-3952-M** |
| | § | |
| **PNC MORTGAGE, *a Division of*** | § | |
| **PNC Bank,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated October 22, 2012, this case has been referred for

pretrial management.  Before the Court for recommendation is *PNC Mortgage's Motion to Dismiss*

*Pursuant to Rule 12(b)(6)* (doc. 7), filed November 7, 2012.  Based on the relevant filings and

applicable law, the motion should be **GRANTED.**

**I.  BACKGROUND**

This case involves attempted foreclosure of real property located at 2120 E. Crosby Road,

Carrollton, Texas 75006 (the Property).  (doc. 1-3 at 3.)[1]  On July 2, 2012, Jose A. Marban and

Maria F. Mendoza (Plaintiffs) filed suit against PNC Mortgage, a division of PNC Bank, National

Association (Defendant) in the 134th Judicial District Court of Dallas County, Texas.  (*Id.* at 2.)

In their state court petition, Plaintiffs allege that they purchased the Property on or about

March 11, 2004, with a promissory note and a deed of trust securing the note.  (*Id.* at 3)  Both the

note and deed of trust named National City Mortgage Co. (National) as the "Lender."  (*Id.* at 3,

---

[1]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

18–19.)   The deed of trust granted Lender, as the beneficiary under the deed of trust, the right to accelerate the debt and "invoke the power of sale and any other remedies permitted by applicable law" in case of Borrowers' (Plaintiffs') default.  (*Id.* at 22, 24.)   It further provided that the "covenants and agreements" under the deed of trust would "bind and benefit the successors and assigns of Lender."  (*Id.* at 23.)

Plaintiffs allege that after it obtained their note, National "was provided a line of credit by undisclosed warehouse lenders," and their debt was pooled into a trust with similar debt pursuant to a Pooling and Servicing Agreement (PSA) for the sale of the debt as securities (i.e., residential mortgage-backed securities) to investors.  (*Id.* at 3.)  The securities were allegedly sold to unknown investors who never recorded a security agreement "to perfect" their right to enforce the note, as they were required to do by the Texas Business and Commerce Code §9.607(b) (the Texas version of the Uniform Commercial Code (UCC)).  (*Id.* at 4.)  The unknown investors "obtained insurance against default on the underlying obligations in the form of 'credit default swaps' [and] other similar instruments."  (*Id.*)  Plaintiffs claim that as a result of the note's securitization and the lack of UCC filings, National's rights in the note were extinguished, Defendant is therefore "not the present owner of the debt", and it has no right to foreclose on the Property.  (*Id.*)  They "demand" that Defendant "produce the one and only wet-ink Original Promissory Note" and "all information and records showing [the] transfer of [the] Note to determine the proper person(s)" who can "receive payment under the Note, [and] negotiate payment or [its] reinstatement."  (*Id.* at 4, 7.)

Plaintiffs also complain that despite being listed as the "mortgage servicer" and National's successor by merger on the notice of substitute trustee sale, Defendant has produced "no evidence," such as a recorded assignment or filings in the Dallas County Clerk's office, showing that it

"acquired any interest in the note and/or trust deed from [National]." (*Id.* at 3.) They seek to "verify" that Defendant is "the owner or holder or the duly appointed representative of the holder of [the] Original Note," and request that Defendant postpone the foreclosure "until the debt is validated and the true Holder of the Note is known." (*Id.* at 4.)

Plaintiffs assert claims for suit to quiet title, declaratory judgment, as well as for violations of the Texas Property Code, the Texas UCC, and the Texas Debt Collection Practices Act (TDCPA). (*Id.* at 5–6, 8–10.) They also seek sanctions, "imposition of fees and costs," exemplary damages, pre- and post-judgment interest, and reasonable attorney's fees, alleging that Defendant committed "fraud upon the Court." (*See id.* at 6–10.)

On July 2, 2012, the state court issued a temporary restraining order restraining Defendant and its agents from foreclosing on the Property. (*See id.* at 103–05.) On October 1, 2012, Defendant removed the action to the U.S. District Court for the Northern District of Texas, asserting diversity jurisdiction under 28 U.S.C. § 1332. (*See* doc. 1.) On November 7, 2012, Defendant moved to dismiss Plaintiffs' complaint. (doc. 7.) Plaintiffs filed a response (doc. 12), Defendant filed a reply (doc. 13), and the motion is now ripe for recommendation.

## II. RULE 12(b)(6) MOTION

Defendant moves to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*See* doc. 7.)

### A.    **Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court

cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556, U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003).  Lastly, it is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Accordingly, documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiffs have attached to their complaint copies of what they contend are the original promissory note and deed of trust, as well as the notice of substitute trustee sale.  (*See* doc. 1-3 at 18–29.)  These documents are considered part of the pleadings.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.  In addition, Defendant has attached to its motion to dismiss copies of what

it claims are the "certificate of merger" between National and Defendant and the official letter from

the U.S. Office of the Comptroller of the Currency approving their merger.  (*See* doc. 7-3 at 2–3.)

The certificate of merger is a matter of public record that can be judicially noticed.  *See Lewis v.

Wells Fargo Bank, N.A.*, No. 3:12-CV-3724-G, 2013 WL 1402317, at *2 (N.D. Tex. Apr. 8, 2013)

(taking judicial notice of the defendant bank's merger with the original mortgagee); *Gregory v.

CitiMortgage, Inc.*, 890 F. Supp. 2d 791, 796 (E.D. Mich. 2012). ("The certificates of merger are

matters of public record. The Court, therefore, considers the documents that the defendants attached

to their motion to dismiss when deciding the motion."); *see also* Fed. R. Evid. 201(b)(2) (a court

may take judicial notice of a fact when "it can be accurately and readily determined from sources

whose accuracy cannot reasonably be disputed").  Because the attachments to Plaintiffs' complaint

and Defendant's motion to dismiss are either part of the pleadings or matters subject to judicial

notice, conversion of the motion to dismiss into a motion for summary judgment is unnecessary.

## B.    Defendant's Authority to Foreclose

Defendant claims that "Plaintiffs' Complaint primarily relies on the argument that there is

no evidence that [Defendant] ever acquired an interest in the Note and/or Deed of Trust from

[National]."  (doc. 7 at 4–5.)  It argues that Plaintiffs' allegation that Defendant "was obliged to

record an assignment" of his mortgage from National to Defendant prior to foreclosing is legally and

factually unfounded because Defendant "is" National "for all intents and purposes as a result of

[their] merger."  (*Id.*)  It also argues that Plaintiffs' "show-me-the-note" theory, on which they

premise all their claims,[2] is invalid under Texas law.  (*Id.* at 5–7.)

_____

[2] Defendant specifically argues that Plaintiffs "fail to state a claim" under the Texas UCC based on their
allegation that Defendant was "require[d] to produce the original note to foreclose."  (doc. 7 at 5.)  It further notes
that Plaintiffs' "show-me-the-note" theory is "interrelated" to their global theory of the case that Defendant "lack[ed]
authority to foreclose."  (doc. 13 at 2.)  In short, Plaintiffs' general allegation that Defendant lacked authority to

In their complaint, Plaintiffs allege that despite Defendant's claim that it is the mortgage servicer, "there is no evidence", such as a recorded assignment or filings with the Dallas County Clerk, showing that it "ever acquired an interest in the Note and/or Trust Deed from [National]." (doc. 1-3 at 3.)  They contend that the securitization of their debt "extinguished" National's rights in the note, and Defendant therefore "could not have acquired [those rights] via the assignment." (*Id.* at 6–7.)  Accordingly, they claim "Defendant must produce the one and only wet-ink Original Promissory Note" they executed in favor of National in order to foreclose.  (*Id.* at 7.)  These allegations appear to be a basis for all their claims for relief.  (*See id.* at 5–9.)

Plaintiffs' allegation that Defendant could not foreclose without first proving its "interest" in the Property by producing the "original wet-ink note" implicates the "show-me-the-note" theory. *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *recommendation adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012).  "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal quotation marks omitted). The theory has been repeatedly rejected in this circuit as having no merit.  *See Bennett*, 2012 WL 2864751, at *3; *see also Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (collecting cases).

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Martins v. BAC Home Loans Servicing, L.P.*, No. 12-20559, 2013 WL 1777487, at *2 (5th Cir. Apr. 26, 2013) (quoting *Reardean v. CitiMortgage, Inc.*,  No. A-11-CA-420-SS, 2011 WL 3268307, at

---

foreclose because it did not own or hold the note appears to be a basis for all their claims for relief.  (*See* doc. 1-3 at 2–10.)

*3 (W.D. Tex. July 25, 2011)).  Under Texas law, promissory notes and deeds of trust are distinct

obligations that afford lenders distinct remedies upon default, "the note against the borrower and the

lien against the real property."  *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV,

2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.).  When the lender

seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder

of the note by producing the original wet-ink instrument."[3]  *Millet v. JP Morgan Chase, N.A.*, No.

SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).  By contrast,

"[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not

the underlying note."  *Reardean*, 2011 WL 3268307, at *3; *accord Martins*, 2013 WL 1777487, at

*2 ("[F]oreclosure ... enforces a deed of trust, rather than the underlying note, and can be

accomplished without judicial supervision.").

"The Texas Property Code provides that either a mortgagee or mortgage servicer may

administer a deed of trust foreclosure without production of the original note."  *Crear v. JP Morgan

Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1, n. 1 (5th Cir. Mar. 28, 2011) (per

curiam) (citing to Tex. Prop. Code §§ 51.0002, 51.0025); *Bennett*, 2012 WL 2864751, at *3.  The

Code defines mortgagee as "the grantee, beneficiary, owner, or holder of a security instrument," or

"if the security interest has been assigned of record, the last person to whom the security interest has

been assigned of record."  Tex. Prop. Code Ann.  § 51.0001(4)(A),(C) (West 2007).  A "mortgage

servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to

send payments for the debt secured by a security instrument."  *Id.* § 51.0001(3).  A mortgagee may

---

[3]  The UCC governs the procedure for establishing "holder" status.  *See* Tex. Bus. & Com. Code Ann.
§§ 3.201, 3.203,and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of
negotiable instruments).

be its own mortgage servicer. *Id.*

A mortgage servicer may also foreclose on behalf of the mortgagee if the parties enter into an agreement and provide the mortgagor with certain disclosures. *See* Tex. Prop. Code § 51.0025. As courts have noted, however, § 51.0025 does "not require the mortgage servicer to be the 'holder' of the Note [or] Deed of Trust or to produce the original loan documents." *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *recommendation adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Darocy v. Chase Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012).

Here, as the original Lender, National was the "beneficiary" under the deed of trust and therefore the mortgagee of Plaintiffs' mortgage. *See* Tex. Prop. Code § 51.0001(4)(A) (*see also* doc. 1-3 at 19.)  Upon its merger with National, Defendant, as the surviving entity, automatically acquired National's status as Lender and mortgagee, as well as all of its interests in the Property. *See Wasserberg v. Flooring Servs. of Texas, LLC*, 376 S.W.3d 202, 207 n. 4 (Tex. App. —Houston [1st Dist.] 2012, no pet.) (explaining that pursuant to Texas law, "all rights of the parties to [a] merger [are] allocated to and vested in the surviving entity without the need for any formal transfer or assignment." (citing to Tex. Bus. Org. Code Ann. § 10.008(a)(2) (West 2011)); *see also Lewis*, 2013 WL 1402317, at *2 ("By virtue of its successor status, [the defendant] also has the status of Lender under the deed of trust signed by [the plaintiff].")); *Salazar v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1309-L, 2012 WL 995296, at *4 (N.D. Tex. Mar. 23, 2012) (holding that as "the successor in interest" to the original lender, the defendant became "the holder of the Note and Deed of Trust for the property at issue") (citation omitted).  As mortgagee, Defendant could foreclose on the Property upon Plaintiffs' default without producing the original note or deed of trust. *See* Tex.

Prop. Code § 51.0001(4)(A); *Martins*, 2013 WL 1777487, at *2. Moreover, because Defendant was its own mortgage servicer (as is indicated on the notice of substitute trustee sale), Defendant could also foreclose on the Property in that capacity. *See* Tex. Prop. Code § 51.0001(3); (doc. 1-3 at 29).

In conclusion, Plaintiffs' allegation that Defendant could not foreclose because it failed to prove its interests in the note cannot support a claim as a matter of law. *See Martins*, 2013 WL 1777487, at *2; *Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *2 (N.D. Tex. June 15, 2012). To the extent Plaintiffs premise their claims on these allegations, the claims fail and are subject to dismissal for failure to state a claim. *See Bennett*, 2012 WL 2864751, at *3.

## C.   **TDCPA**[8]

Defendant also moves to dismiss Plaintiffs' claims under the TDCPA for failure to state a claim upon which relief can be granted. (doc. 7 at 7.) It contends that Plaintiffs' claims under §§ 392.303 and 392.304 fail because they are premised on their "allegation that [Defendant] did not provide evidence that it was in fact the owner or holder of the original note before instituting foreclosure proceedings." (*Id.*) It argues that Plaintiffs also fail to state a claim under § 392.301(8) because they "state no facts that show [Defendant] threatened to take an action prohibited by law" since Defendant had a contractual right to "foreclose on the security for the Note." (*Id.*)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012),

---

[8] Plaintiffs appear to assert claims under the Tex. Prop. Code and the UCC. (*See* doc. 1-3 at 5–6.) They are not specifically addressed because even though they are listed as separate causes of action, Plaintiffs' allegations for these purported claims are merely part of their "show-me-the-note" theory. (*See id.*)

*recommendation adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012).  The Act defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection."  Tex. Fin. Code Ann. § 392.001(6) (West 2006).  "Debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."  *Id.* § 392.001(5).  Debt collection can include "actions taken in foreclosing real property."  *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted); *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 5 (N.D. Tex. Jan. 20, 2012).  Defendant's attempted foreclosure may therefore fall within the purview of the TDCPA.  *See Sanghera*, 2012 WL 555155, at *7.

### 1.    *Sections 392.303(a) and 392.304(a)*

Section 392.303(a) prohibits a debt collector from using "unfair or unconscionable means that employ [certain prohibited] practices" during debt collection.  Tex. Fin. Code Ann. § 392.303(a) (West 2005).  During debt collection, or obtaining information concerning a consumer, § 392.304(a) prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation that employs [certain prohibited] practices."  Tex. Fin. Code Ann. § 392.304(a) (14) (West 2004).  The section lists 18 specific practices that violate the Act and includes a "catch-all" provision.  *See id.* § 392.304(a)(1)–(19).  For a party's statement to constitute a misrepresentation under § 392.304(a), that party "must have made a false or misleading assertion."  *Sanghera*, 2012 WL 555155, at *9.

Plaintiffs argue that Defendant "engaged in actions to collect on the note," and these actions were "fraudulent, deceptive and/or misleading representations, actionable under ... §§ 392.303 or 392.304" because Defendant lacked authority to collect on the note.  (doc. 1-3 at 6.)  First, Plaintiffs do not identify a specific provision of §§ 392.303(a) or 392.304(a) or a particular prohibited practice

that Defendant allegedly violated.  This failure alone warrants dismissal of their claims.  *See Iqbal*,

556 U.S.  at 678 (to survive dismissal, the complaint must provide sufficient "factual content [to]

allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged").  Plaintiffs also fail to explain what actions Defendant undertook to "collect" on the note.

To the extent that they implicitly refer to the non-judicial foreclosure, their allegations fail to raise

a reasonable inference that this "action" was unconscionable, fraudulent, deceptive, or misleading

because Defendant acquired the authority to foreclose upon Plaintiffs' default by virtue of its merger

with National.  *See* Tex. Bus. Org. Code § 10.008(a)(2); *Lewis*, 2013 WL 1402317, at *2.  Moreover,

according to Plaintiffs' own complaint and the notice of substitute trustee sale, Defendant could also

foreclose on the Property as the servicer of their mortgage.  (*See* doc. 1-3 at 3, 29.); *see also* Tex.

Prop. Code §§ 51.0001(3), 51.0025.  Defendant could exercise its authority to foreclose without

needing to produce the promissory note.  *Martins*, 2013 WL 1777487, at *2.  Accordingly,

Plaintiffs' claims under §§ 392.303(a) and 392.304(a) fail and should be dismissed for failure to

state a claim.  *See Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6

(N.D. Tex. Aug. 29, 2012) (dismissing TDCPA claim where the plaintiffs neither pointed to specific

provisions that the defendant allegedly violated, nor supplied sufficient facts to state a plausible

claim for relief—other than their invalid theory that the defendant could not foreclose because it was

not the holder of the note).

### 2.     *Section 392.301(a)(8)*

Section 392.301(a)(8) of the TDCPA provides: "In debt collection, a debt collector may not

use threats, coercion, or attempts to coerce that employ ... threatening to take an action prohibited

by law."  Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006).

12

Here, Plaintiffs argue only that Defendant "is in violation" of § 392.301(a)(8) because it has "no authority to collect on the Note or hold a Substitute Trustee's Sale." (doc. 1-3 at 6.) This allegation could not plausibly entitle them to relief because Defendant did have authority to foreclose pursuant to the deed of trust. Notably, while Plaintiffs maintain that Defendant could not foreclose, they fail to allege they were current on their mortgage payments or offer any other factual support for their challenge to Defendant's attempted foreclosure. The complaint therefore fails to raise a reasonable inference that the foreclosure was an action prohibited by law. *See Swim*, 2012 WL 170758, at * 5 ("[T]he TDCPA 'does not prevent a debt collector from....exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings.'") (citing to Tex. Fin. Code § 392.301(b)(3)); *see also Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012) (holding that "foreclosure or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on [her] mortgage"). Because Plaintiffs fail to state a viable claim under § 392.301(a)(8), this claim should also be dismissed.

**D.    Claim for Attorney's Fees, Court Costs, and Miscellaneous Fees Based on "Fraud"**

Defendant next moves to dismiss Plaintiffs' request for attorney's fees and court costs based on their "fraud upon the Court" theory, arguing that they have failed to plead a fraud claim "as a matter of law." (doc. 7 at 7–9.)

In Texas, the elements of simple common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) the defendant knew the representation was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the

plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Here, any fraud claim against Defendant is based on Plaintiffs' allegation that Defendant lacked authority to foreclose because it was not the owner or holder of the note.   (*See* doc. 1-3 at 9.)  They allege that the securitization of the note rendered the deed of trust "unenforceable", and Defendant's "pretenses of authority to foreclose or attempt to foreclose" under the deed of trust were therefore "fraudulent." (*Id.*)  In addition, they claim that "Defendant's [purported] assertions to the Court that it [held] and [was] entitled to enforce the obligations of the Note ... constitute[d] fraud upon the Court, subjecting Defendant to sanctions and imposition of fees and costs." (*Id.*)  They request attorney's fees, court costs, and the reimbursement of the "unnecessary fees and charges [they paid] under the Note and Trust Deed." (*Id.*)

Plaintiffs' allegations fail to show that Defendant made a false representation given that Defendant acquired National's authority to foreclose by virtue of their merger.  Defendant could also foreclose on the Property as the servicer of Plaintiff's mortgage.  Notably, Plaintiffs' statement that they seek to "verify" that Defendant is authorized to foreclose before the foreclosure takes place fails to show reasonable reliance on their part, and shows instead their attempt to contest Defendant's alleged fraud. *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2013 WL 655059, at *6 (N.D. Tex. Feb. 5, 2013), *recommendation adopted*, 2013 WL 655054 (N.D. Tex. Feb. 22, 2013) (instead of showing "reasonable reliance", the plaintiff's allegation that "he retained legal counsel to 'prevent' the foreclosure" actually "show[ed] his attempt to contest [the] Defendants' purportedly

fraudulent actions"); (*see* doc. 1-3 at 4).  Accordingly, to the extent that Plaintiffs assert a fraud claim against Defendant, the claim fails and should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.  *See Bennett*, 2013 WL 655059, at *6.

## E.      Suit to Quiet Title

Defendant also contends that Plaintiffs have not stated a viable quiet title claim because they "fail to plead any facts" indicating that Defendant's interest under the deed of trust is unenforceable or that there were "defects in [Defendant's] non-judicial foreclosure proceedings."  (doc. 7 at 10.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property."  *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right."  *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted).  To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable.  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)).  The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference."  *Id.* at 766–67 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).  Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex.

App.—Corpus Christi 2001, no pet.).

Here, Plaintiffs aver they "are the owners of the [Property]." (docs. 1-3 at 3; 12 at 11.) They claim that Defendant's attempted foreclosure and "the threat of multiple recoveries" resulting from the securitization of their loan placed a cloud on their title. (doc. 1-3 at 8.) To establish their superior title, Plaintiffs (1) challenge Defendant's acquisition of National's interests in the Property, and (2) assert that the securitization of the debt "extinguished" any interest National (and therefore Defendant) may have under the note and deed of trust. (*Id.* at 4, 6–8.)

### 1.    *Defendant's Acquisition of National's Interest*

Plaintiffs question whether Defendant acquired an interest in the note and deed of trust from National, arguing that there is no recording of an assignment and "no filings with the Dallas County Clerk" showing that was the case. (doc. 1-3 at 3.) Nevertheless, Plaintiffs' complaint, the notice of substitute trustee sale, and the certificate of merger all identify Defendant as National's successor by merger. (*See* docs. 1-3 at 3, 29; 7-3 at 2.) Plaintiffs cite no authority supporting their contention that the lack of a filing with the County Clerk extinguished any interest acquired by Defendant as National's successor. As previously explained, Texas law requires no public filing for the surviving entity of a merger to obtain title to the assets of the merged entity. *See* Tex. Bus. Org. Code Ann. § 10.008(a)(2); *Lewis*, 2013 WL 1402317, at *3 (holding that no public filing was required to prove the defendant's authority to foreclose because such authority "derive[d], not from an assignment, but from the fact that it [was] the successor by merger to [the original lender] and ha[d] the explicit authority—as Lender under the deed of trust—to foreclose"). Without any legal basis in support, Plaintiffs' suit to quiet title based on this allegation is subject to dismissal for failure to state a claim.

### 2.      *Securitization of the Note*

Plaintiffs also allege that the debt was securitized, i.e., pooled with similar debt pursuant to a PSA, and transferred into an asset-backed trust, for the purpose of creating saleable residential mortgage-backed securities.  (doc. 1-3 at 3–4, 6.)  They argue that the securitization "extinguished" all the rights National had under the note and "Defendant could not have acquired [those rights] via the assignment."  (*Id.* at 6–7.)  Accordingly, they aver that "Defendant is not the present owner of the debt ... [and] has no right to sell the Property ... at foreclosure."  (*Id.*)  Lastly, they contend that the securitization subjected them to "multiple and unpredictable recoveries" and made it impossible for them to "safely discharge" their obligations under the note and deed of trust.  (*Id.* at 8.)

Plaintiffs cite no legal authority to support their theory that any securitization of their loan rendered the note and accompanying deed of trust unenforceable and discharged their obligations under them.  Courts in this district have found this theory to be without merit.  *See e.g.*, *Abruzzo v. PNC Bank, N.A.*, No. 4:11-CV-735-Y, 2012 WL 3200871, at *2 (N.D. Tex. July 30, 2012); *Warren v. Bank of Am.,* N.A., No. 3:11-CV-3603-M, 2012 WL 3020075, at *6 (N.D. Tex. June 19, 2012), *recommendation adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012); *Lamb v. Wells Fargo Bank*, NA, 3:12-CV-00680-L, 2012 WL 1888152, at *5 (N.D. Tex. May 24, 2012) (explaining that the mortgage, i.e., the deed of trust, and the loan are not interchangeable, and therefore the transfer of the plaintiff's loan into an asset-backed trust did not affect the mortgagee's authority to foreclose on the mortgaged property pursuant to the deed of trust).

Because Plaintiffs base their quiet title claim on invalid legal theories and fail to sufficiently plead they have superior title to the Property vis-à-vis Defendant, this claim should also be dismissed for failure to state a claim.  *See Warren*, 2012 WL 3020075, at *6.

F.     <u>**Declaratory Judgment**</u>

Defendant next contends that Plaintiffs' request for declaratory relief cannot survive without a viable cause of action.  (doc. 7 at 10.)

Plaintiffs seek declaratory relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  (*See* doc. 1-3 at 6–8.)  "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012).  In light of removal, the action may be construed as one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act").

The federal Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C.A. § 2201 (West 2010).  The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."  *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted).  The Act is an authorization and not a command, and allows federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment.  *Id.*

Here, Plaintiffs seek numerous declarations, including that: (1) Defendant "lacks any interest under the Note and/or Trust Deed [that] may be enforced by lien upon or sale of the subject propert[y]"; (2) the securitization of the note deprived Defendant of any interest in the note or deed of trust; (3) Defendant did not know whether a default occurred or was declared by the actual owners of the debt; and (4) Defendant "lacked authority to declare a default" under the note, "sell the [Property]," or "distribute any proceeds" from such sale.  (doc. 1-3 at 6–8.)  The requested declarations are based on Plaintiffs' ill-founded theories regarding Defendant's acquisition of National's interest and the alleged securitization of their loan.  (*See id.* at 4–8.)  Because Plaintiffs' complaint fails to state a viable claim against Defendant or demonstrate that a genuine controversy exists between the parties, their declaratory judgment action should also be dismissed.  *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

### III.  REQUEST FOR LEAVE TO AMEND

Notwithstanding their failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, C.J.) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Here, as an alternative to dismissal of their

complaint for failure to state a claim, Plaintiffs specifically request an opportunity to replead to cure any deficiencies.  (doc. 12 at 12.)

Where a responsive pleading has not been filed, Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend its pleading once as a matter of course within 21 days after serving it.  Otherwise, either the opposing party's written consent or the court's leave is required. *See* Fed. R. Civ. P. 15(a)(2).  Rule 15(a) evinces a bias in favor of amendment and requires that leave be granted "freely."  *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982).  A court's discretion to grant leave is therefore severely limited by the bias of Rule 15(a) favoring amendment.  *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Accordingly, leave to amend should not be denied unless there is a "substantial reason" to do so. *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998).  There is a substantial reason to deny leave if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Plaintiffs have not amended their complaint since filing this action.  Because they request leave to amend early in the litigation and will assert no new claims, any amended complaint would not cause undue delay or prejudice to Defendant.  *See Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (holding that an amended complaint causes prejudice when it asserts a new claim requiring the defendant "to reopen discovery" or prepare a new defense); *Hyde v. Hoffman-La Roche Inc.*, No. CIV A 304-CV-1473-B, 2008 WL 2923818, at *2 (N.D. Tex. July 30, 2008) (finding that

the proposed amendment would "undoubtedly cause undue delay and prejudice" to the defendants

because it was requested "over four years into the case").  Moreover, nothing in the record suggests

bad faith or a dilatory motive on Plaintiffs' part.  *See, e.g.*, *WRR Indus., Inc. v. Prologis*, No. CIV.A.

3:04-CV-2544, 2006 WL 1814126, at *5 (N.D. Tex. June 30, 2006) (finding that the plaintiff's

proposed amendment suggested a dilatory intent and bad faith on its part because it had previously

requested two extensions of time and filed its motion for leave "only after [the defendant] refused

to drop its counterclaims").

Because there is no apparent substantial reason to deny leave to amend, Plaintiffs should be

accorded an opportunity to amend their complaint to sufficiently state a claim for relief.

## IV.  RECOMMENDATION

If Plaintiffs do not file an amended complaint that states a claim for relief within the 14 days

allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's

motion to dismiss should be **GRANTED**, and all of Plaintiffs' claims against Defendant should be

dismissed with prejudice.  If Plaintiffs timely file an amended complaint, however, Defendant's

motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the

amended complaint.

**SO RECOMMENDED** on this 7th day of June, 2013.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE